UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELVIN OSEAS NAJERAS NAJERAS,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-01166-LK

ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR WRIT
OF HABEAS CORPUS

This matter comes before the Court on Petitioner Melvin Oseas Najeras Najeras's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons described below, the Court grants in part and denies in part the petition.[1]

## I.    BACKGROUND

Najeras Najeras is a native and citizen of Guatemala. Dkt. No. 8 at 2. He entered the United States on May 8, 2022, when he was 17 years old. Dkt. No. 2 at 1. Border Patrol encountered Najeras Najeras in Progreso, Texas, briefly detained him, and released him on an order of recognizance ("OREC") on May 25, 2022. Dkt. No. 8 at 2. On February 1, 2023, the Department

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

of Homeland Security ("DHS") issued him a Notice to Appear ("NTA") alleging that he was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* On July 9, 2025, Najeras Najeras filed for an unspecified "immigration benefit" with the United States Citizenship and Immigration Services ("USCIS"); the "immigration benefit is still pending with USCIS." *Id.* at 3.[2] On August 19, 2025, an immigration judge ("IJ") conducted a merits hearing for Najeras Najeras and ordered him removed to Guatemala. Dkt. No. 8 at 3; *see* Dkt. No. 7-1. Through counsel, Najeras Najeras appealed this order to the Board of Immigration Appeals ("BIA") on September 19, 2025, where the appeal remains pending. Dkt. No. 8 at 3.

DHS records indicate that Najeras Najeras "came to the attention" of the agency "while conducting an investigation to apprehend an at large prior removal." Dkt. No. 7-2 at 3. "Record checks" indicated that Najeras Najeras was ordered removed by an IJ on August 19, 2025 and "had a recent arrest for Driving Under the Influence." *Id.* Based on this information, DHS "initiated an investigation to locate and apprehend" him. *Id.* On September 19, 2025, DHS agents went to the address in Burien, Washington associated with Najeras Najeras and, after pulling over his car, arrested and detained him. *Id.* at 3–4. Najeras Najeras avers that he was not provided notice or a hearing prior to his arrest, that the agents did not tell him why he was being arrested, and that he "had to leave [his] car on the street." Dkt. No. 2 at 2–3. His A-file states that "officers notified [him] that [they] had an immigration warrant for his arrest" at the time of his arrest. Dkt. No. 7-2 at 4; Dkt. No. 7-3 at 2 (warrant signed by an immigration officer stating that it was served on September 19, 2025, and read to Najeras Najeras in English). DHS agents transported him to the

---

[2] Najeras Najeras states that he "think[s] [he] filed for asylum around December 2022" and that his "asylum case was denied" on August 19, 2025. Dkt. No. 2 at 2. Deportation Officer Gary Ingram asserts that Najeras Najeras "did not file an Application for Asylum and for Withholding of Removal with the immigration court." Dkt. No. 8 at 2. The summary of the oral decision issued by the IJ at the August 19, 2025 hearing does not indicate that the IJ ruled on any claims of asylum or withholding. Dkt. No. 7-1.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

Northwest ICE Processing Center ("NWIPC") the same day, where he remains detained. *Id.*; Dkt. No. 8 at 3.

On April 7, 2026, Najeras Najeras filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. On April 22, 2026, Respondents[3] filed a return, Dkt. No. 6, and on April 27, 2026, Najeras Najeras filed a traverse, Dkt. No. 9.

## II.    DISCUSSION

In his habeas petition, Najeras Najeras asserts that Respondents violated his right to procedural due process under the Fifth Amendment by re-detaining him "without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk," which he contends "must occur prior to any re-detention." Dkt. No. 1 at 14–15. He requests (1) immediate release from custody on the same conditions of release that he was under prior to his re-detention; (2) injunctive relief preventing his re-detention "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that his [sic] is a flight risk or danger to the community and that no alternative to detention would mitigate those risks"; and (3) leave for his counsel to seek attorney's fees under the Equal Access to Justice Act. *Id.* at 15–16.

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody

---

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

## B.    Najeras Najeras Has Established a Due Process Violation

Like many petitions before the Court, Najeras Najeras's petition ignores the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See* Dkt. No. 1 at 6–11. But the Ninth Circuit has rejected such a

proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

        1.        <u>Process Required by the Statute</u>

        a.        *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Respondents aver that Najeras Najeras is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because he is an applicant for admission. Dkt. No. 6 at 3 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026)). Najeras Najeras disagrees, contending that Respondents previously treated him "as subject to discretionary detention under 8 U.S.C. § 1226" such that he is "in reality subject to 1226(a) and not 1225(b)[.]" Dkt. No. 9 at 4.

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

Respondents acknowledge that courts in this District have found that a noncitizen released on an OREC is not detained under Section 1225(b). Dkt. No. 6 at 5. As stated repeatedly,[4] this Court agrees with the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025) and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23; *see also Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *4–6 (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *5–20 (11th Cir. May 6, 2026). "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Id.* at 1325; *see also Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *3–9 (2d Cir. Apr. 28, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138–41 (8th Cir. 2026) (Erickson, J., dissenting). Furthermore, if Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez,* 166 F.4th at 511 (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)); *see also Lopez-Campos*, 2026 WL 1283891, at *5; *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

---

*See, e.g., Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 905035, at *3 (W.D. Wash. Apr. 2, 2026); *Singh v. Noem*, No. 2:26-CV-00503-LK, 2026 WL 657036, at *3 (W.D. Wash. Mar. 9, 2026); *Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *4 (W.D. Wash. Feb. 23, 2026).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)) *see also Lopez-Campos*, 2026 WL 1283891, at *6 ("[T]he government's previously unbroken 29-year streak of applying § 1226(a) as opposed to § 1225(b)(2)(A) to noncitizens like Petitioners is consequential."). The government has treated Najeras Najeras as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his September 2025 detention. Specifically, after Najeras Najeras entered the United States in May 2022, he was released on an OREC pursuant to 8 U.S.C. § 1226(a). Dkt. No. 8 at 2; *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited May 11, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "[p]ursuant to section 236(a) of the INA"). Furthermore, the NTA issued to Najeras Najeras in February 2023 states that he is a noncitizen "present in the United States who has not been admitted or paroled"—not "an arriving alien." Dkt. No. 3-1 at 2. Nothing in the record prior to his September 2025 arrest suggests that his release was pursuant to Section 1225(b).[5] These facts demonstrate that Najeras Najeras's detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

---

[5] Officer Ingram avers that Najeras Najeras was initially detained in May 2022 pursuant to 8 U.S.C. § 1225, but this is unsupported by any exhibits, and it contradicts the basis for inadmissibility provided in the NTA. Dkt. No. 8 at 2. Ingram also asserts that Najeras Najeras is currently held pursuant to 8 U.S.C. § 1231, *id.* at 3, which is demonstrably false, as Najeras Najeras does not have an administratively final order of removal due to his appeal to the BIA, *see* 8 U.S.C. § 1231(a)(1)(B). Respondents concede as much in their return by asserting only Section 1225(b) as the basis for detention. *See generally* Dkt. No. 6.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

As noted above, Najeras Najeras does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) in his petition, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").[6] Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

        b.     *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

---

[6] While Najeras Najeras discusses this issue in his traverse, a habeas petitioner may not raise wholly new arguments in his reply brief. *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025), *report and recommendation adopted in part, rejected in part on other grounds,* 2026 WL 686499 (S.D.N.Y. Mar. 11, 2026); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . in a statement of additional grounds."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a

showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2.    Due Process Requirements

As discussed above, Najeras Najeras contends that his Fifth Amendment rights were violated by his re-detention without "written notice and a hearing prior to re-detention[.]" Dkt. No. 1 at 15. Respondents argue that Najeras Najeras was not entitled to any process prior to being re-detained, and in any case, his "re-detention qualifies as a special case due to his DUI arrest" in September 2025. Dkt. No. 6 at 6–7. Najeras Najeras counters that "Respondents offer no evidence of the conditions of [his] OREC" and offer only a "conclusory statement" that he violated the conditions of release. Dkt. No. 9 at 9. He further notes that an arrest is "merely an allegation" that a violation occurred, not a guilty verdict. *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id.* at 1179–80.

        a.       *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Najeras Najeras in 2022, DHS released him on his own recognizance. Dkt. No. 8 at 2. He spent the vast majority of his three years in the United States released on an OREC, during which time he found a job, "enrolled in school, secured stable housing with [his] uncle, attended all [his] court dates, made friends, and made a life for [him]self."

Dkt. No. 2 at 2. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

    b.    *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Najeras Najeras has a weighty private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Najeras Najeras has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing at the outset of detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Najeras Najeras.

Turning to the second factor, Najeras Najeras argues that notice and a hearing are necessary "[t]o protect against arbitrary re-detention and to ensure the right to liberty[.]" Dkt. No. 1 at 7. Because Respondents purported to detain Najeras Najeras under 8 U.S.C. § 1225(b), he was

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 12

stripped of his right to a bond hearing. *See* Dkt. No. 6 at 3 ("ICE detains Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A)," subjecting him to "mandatory detention"). Respondents also make no attempt to show that Najeras Najeras's OREC was timely revoked by an appropriate official; indeed, they do not even provide the OREC. Again, the government's stated view is that noncitizens previously subject to discretionary detention under 1226(a) are now subject to mandatory detention with no right to a hearing under section 1225(b), Dkt. No. 6 at 5, and this erroneous position undergirds any decision to detain a noncitizen like Najeras Najeras who was previously subject to 1226(a). "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025). The risk of erroneous deprivation is also significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

Because the above-described procedures operate to "prevent[ ] arbitrary revocations and ensure[ ] that detention decisions rest[ ] on individualized assessments of changed circumstances rather than categorical assumptions," *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *5 (W.D. Wash. Oct. 7, 2025), adherence to the government's

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

procedures would have mitigated the risk of erroneous deprivation. *See also Saravia*, 905 F.3d 1137 (upholding district court's class-wide preliminary injunction requiring a prompt hearing for noncitizens suspected of gang activity at which the government would be required to demonstrate that changed circumstances justified arrest and detention). While Respondents claim that Najeras Najeras was re-detained "because he had violated the terms of his release"—specifically, he had been arrested for driving under the influence by local police on September 2, 2025, Dkt. No. 6 at 2; Dkt. No. 8 at 3—that does not excuse their compliance with the applicable regulations. Respondents also failed to submit Najeras Najeras's OREC, and therefore cannot point to a particular provision he violated. This factor weighs in favor of Najeras Najeras.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado*, 809 F. Supp. 3d at 1161. The Court can identify no reason that an individualized hearing would interfere with the government's interests. Therefore, the Court finds that this factor too weighs in favor of Najeras Najeras.

Under *Matthews*, the Court finds that Respondents failed to provide Najeras Najeras with the process owed to him under the Due Process Clause, and accordingly, his detention is unlawful.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

## C.    Tailored Injunctive Relief is Warranted

In addition to immediate release, Najeras Najeras requests an order "permanently enjoining his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that his is a flight risk or danger to the community and that no alternative to detention would mitigate those risks[.]" Dkt. No. 1 at 15. He clarifies that he is "not requesting a blanket prohibition of re-detention under all circumstances," but rather seeking an order preventing Respondents from re-detaining him "in a same or similar manner as they have" in the instant case, in which he was "detained without any due process." *Id.* at 11. He requests that the "Court take judicial notice" of the significant number of cases in this district in which courts have found that "re-detention requires procedural safeguards pursuant to the Due Process clause." *Id.* at 13. He argues that Respondents have "made it clear" that despite rulings in many cases that "this exact type of re-detention has been determined to violate the Due Process clause of the Fifth Amendment, they do not intend on changing their re-detention practices." *Id.* at 12. According to Najeras Najeras, the "fact that ICE has not changed its practices to comport with the Court's rulings," coupled with his rights being "so easily violated in the first instance," establish a cognizable danger that [he] could be arbitrarily re-detained again"—thereby suffering irreparable injury—unless the Court issues a permanent injunction. *Id.* at 14; Dkt. No. 9 at 11–12.

Respondents assert that Najeras Najeras has failed "to allege that re-detention is likely to occur without proper notice and an opportunity to be heard," and that even if he did, "such an assertion would be speculative at best and could not encompass every scenario for which Petitioner might be re-detained or detention may be required." Dkt. No. 6 at 2.

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman*, 977 F.3d at 941. Specifically, where, as here, habeas petitioners raise Due Process claims and have

also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Id.* at 941–42. A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Najeras Najeras has shown that injunctive relief is appropriate. He has been detained for over seven months after being taken into detention in a manner that violated his due process rights, and there is a cognizable danger that a violation of this same nature will recur. As Najeras Najeras emphasizes, Dkt. No. 1 at 12, Respondents have been on notice in this District for at least seven months that re-detaining individuals like him who were arrested while already present in the United States without providing a bond hearing violates the Fifth Amendment's Due Process clause. *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–36. Since that time, Respondents have continued to re-detain such individuals in this District in the same constitutionally deficient manner

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 16

on innumerable occasions, despite numerous court orders repeatedly finding that these actions violate due process. Indeed, Respondents "acknowledge that courts in this District have found . . . a person released on OREC to not be detained under Section 1225(b)," but nevertheless maintain that Najeras Najeras is detained pursuant to that section, which subjects him to mandatory detention. Dkt. No. 6 at 3, 5 (citing *Buenrostro-Mendez*, 166 F.4th at 498). There is a specific risk that Respondents will again re-detain Najeras Najeras in the same manner: as they state in their return, they believe that his DUI arrest (which resulted in a case that is still pending) constitutes a violation of his OREC that justifies his re-detention without a bond hearing. Dkt. No. 6 at 2–3, 5–8; *see also* Dkt. No. 8 at 3; Dkt. No. 10 at 4–7 (state court records of DUI incident indicating that the City of Burien has thus far declined to file charges). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Id.* at 999.

Finally, the Court finds that both the balance of equities and the public interest favor the entry of a permanent injunction. These two factors merge when the federal government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022). As noted above, the government's interests in enforcing immigration laws and protecting the public are in fact served by the determination by an IJ as to whether a noncitizen is dangerous or at risk of fleeing removal proceedings. *Escobar Salgado*, 809 F. Supp. 3d at 1161. And it "is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020).

Although the Court finds injunctive relief to be appropriate, the scope of Najeras Najeras's requested injunction is overbroad. First, his request that Respondents be required to meet a clear

and convincing evidence standard at any bond hearing, Dkt. No. 1 at 15, is not supported by authority. Najeras Najeras's request for the same injunctive relief no matter what statute he is detained under is likewise overbroad. Accordingly, Court will order tailored injunctive relief requiring that any bond hearing comport with Section 1226(a) for so long as Najeras Najeras is subject to that statute. *Galvez*, 52 F.4th at 834 ("Although the 'district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction,' the injunction 'must be tailored to remedy the specific harm alleged.'" (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)).

### III.    CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court orders as follows:

1.    Respondents shall immediately release Najeras Najeras from custody on the terms of his most recent OREC or other terms consistent with Section 1226(a);

2.    The parties shall file a Joint Status Report by May 15, 2026, confirming that Najeras Najeras has been released;

3.    Absent extenuating circumstances, and so long as Najeras Najeras continues to be subject to Section 1226(a), as the Court has construed it in this Order, Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them shall not re-detain Najeras Najeras without a pre-detention hearing as required under Section 1226(a) and its implementing regulations;

4.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 18

Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 14th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 19